[No. B127891. Second Dist., Div. Two. Nov. 4, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH A. VICHROY, Defendant and Appellant.

94

**COUNSEL**

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and April Sylvester, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BOREN, P. J.**—Joseph A. Vichroy (appellant) appeals the judgment entered following his conviction by a jury of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)),[1] and two counts of committing a forcible lewd act upon a child (§ 288, subd. (b)(1)), with findings by the trial court that he had suffered two prior serious felony convictions (§ 667, subd. (a)(1)) and seven prior "strike" convictions (§§ 667, subds. (b) through (i), 1170.12,

---

[1]All further statutory references are to the Penal Code, unless otherwise indicated.

subds. (a) through (d)). He was sentenced to state prison for a total term of 60 years to life and ordered to pay a $5,000 restitution fine.

CONTENTIONS

Appellant contends (1) the statute authorizing admission of evidence of his prior sexual misconduct violates due process and Evidence Code section 352; (2) the court erred in giving the jury CALJIC No. 2.50.01; and (3) his sentence constitutes cruel and unusual punishment.

Respondent contends the judgment must be modified to reflect a $5,000 parole revocation fine.

FACTS

On 10 to 15 separate occasions during the summer of 1997, appellant forced his 13-year-old stepdaughter, Sheba D., to show him her "privates," or genital area. On each such occasion, appellant had Sheba remove her pants and underwear, lie on a bed, spread her legs and show him her genital area as he sat naked on the floor before her and masturbated. On at least three such occasions, appellant asked Sheba to touch her vagina. Sheba did not tell anyone about appellant's conduct because she feared him, as he had on two or three occasions threatened to blow up her house or kill her.

In January 1998, while Sheba's mother was hospitalized, appellant asked Sheba to remove her clothing. When she refused, appellant became angry and raised his fist as though to hit her. His fist came within three inches of her person.

Following an investigation of Sheba's charges, in March 1998, appellant telephoned Los Angeles County Deputy Sheriff Warren Asmus, who urged appellant to turn himself in. Appellant repeatedly stated he could not. He stated that if he did turn himself in, he would probably go to jail for the rest of his life for what he thought Sheba had reported.

Over appellant's objection, 10-year-old Kyla P. testified that in August 1997, appellant, who was working as a handyman at the home of Kyla's grandmother and where she lived, asked her on at least three occasions if he could touch her "private," or genital area. Kyla refused and eventually told her grandmother's caregiver. The caregiver told Kyla's parents, who called the police.

Desiree O. also testified over appellant's objection. Desiree stated that in 1996, when she was 14 years old and her sister, Kathy O., was 12 years old,

appellant managed the apartment complex where the girls lived with their grandmother. On May 24, 1996, appellant came to the girls' bedroom window and looked in at them. After he left, Desiree found a note on the windowsill, stating, "A hundred dollars off rent if shown." Desiree believed appellant wanted her to show him her "body parts." Later that month, appellant appeared again, whispered Desiree's name and asked her to come to the window. She and Kathy remained in their beds and appellant disappeared after about 10 minutes, leaving a $20 bill on the window sill. He had written on the bill, "There's more where this came from. Show me."

The next time Desiree heard appellant outside of her bedroom, she asked a visiting friend to go to the window and see if he was still there. The friend peeked out, then screamed and ran from the room. On another occasion, in June 1996, Desiree saw appellant looking in the window and told him she was going to call the police. He called her a bitch and stated he could evict her family. These incidents were eventually reported to the police.

## DISCUSSION

1. *Admissibility of evidence of appellant's prior sex offenses.*

■ Evidence Code section 1101, subdivision (a) provides: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivision (b) of section 1101 allows the admission of "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." In 1995, the Legislature enacted Evidence Code section 1108 (Stats. 1995, ch. 439, § 2), which provides in subdivision (a): "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[2] Appellant contends this statute, which permits the admission of character evidence to prove disposition, violates due process.

[2]Evidence Code section 1108 provides, in full: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not

The record shows that at trial, appellant objected to the admission of the subject evidence on the grounds (1) the People failed to give the 30 days' notice required by subdivision (b) of Evidence Code section 1108, (2) the evidence should be excluded under Evidence Code section 1101, (3) the evidence should be excluded under Evidence Code section 352, and (4) with respect to his Peeping Tom conduct, he was convicted only of violating section 647, subdivision (h). We reject his constitutional argument because no objection on that ground was raised below. ██ "It is 'the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.' [Citations.]" (*People* v. *Raley* (1992) 2 Cal.4th 870, 892 [8 Cal.Rptr.2d 678, 830 P.2d 712].)

In any event, appellant's constitutional argument was considered and rejected in *People* v. *Falsetta* (1999) 21 Cal.4th 903, 911-925 [89 Cal.Rptr.2d 847, 986 P.2d 182], in which the court relied on reasoning articulated in *People* v. *Fitch* (1997) 55 Cal.App.4th 172, 178-185 [63 Cal.Rptr.2d 753].

██ Citing *Michelson* v. *United States* (1948) 335 U.S. 469, 476 [69 S.Ct. 213, 218-219, 93 L.Ed. 168], and *People* v. *Smallwood* (1986) 42 Cal.3d 415, 428 [228 Cal.Rptr. 913, 722 P.2d 197], appellant contends the admission of propensity evidence necessarily violates the safeguard of Evidence Code section 352.[3] As the court pointed out in *People* v. *Falsetta, supra,* 21 Cal.4th at page 914, the common law was ambivalent concerning the prohibition against character evidence, and that ambivalence was greatest

---

inadmissible pursuant to Section 352. [¶] (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least 30 days before the scheduled date of trial or at such later time as the court may allow for good cause. [¶] (c) This section shall not be construed to limit the admission or consideration of evidence under any other section of this code. [¶] (d) As used in this section, the following definitions shall apply: [¶] (1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following: [¶] (A) Any conduct proscribed by Section 243.4, 261, 261.5, 262, 264.1, 266c, 286, 288, 288a, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6 of the Penal Code. [¶] (B) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. [¶] (C) Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] (D) Deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person. [¶] (E) An attempt or conspiracy to engage in conduct described in this paragraph. [¶] (2) 'Consent' shall have the same meaning as provided in Section 261.6 of the Penal Code, except that it does not include consent which is legally ineffective because of the age, mental disorder, or developmental or physical disability of the victim."

[3]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a)

in sex offense cases. " 'Courts have liberally interpreted evidence rules to permit the admission of uncharged sexual misconduct under the rubric of motive, identity and common plan, or more directly admitted it under an exception known as the "lustful disposition" rule. (1A Wigmore on Evidence [(Tillers rev. 1983)] § 62.2, pp. 1334-1335 ["Do such decisions show that the general rule against the use of propensity evidence against an accused is not honored in sex offense prosecutions? We think so."]; 1 McCormick on Evidence (Strong 1992) § 190, pp. 803-804; Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases* (1993) 21 Am. J. Crim. L. 127, 128-217.)' [Citations.]" (*Ibid.*) "More recently, the ban on uncharged sexual misconduct as character evidence in sex offense cases has been eliminated in federal courts under rule 413 of the Federal Rules of Evidence (28 U.S.C.).[4]" (*People v. Fitch, supra*, 55 Cal.App.4th at p. 181.)

The decision in *Michelson* predates the adoption in 1994 of Federal Rules of Evidence, rule 413 (28 U.S.C.), which has withstood constitutional challenge in the federal appellate courts. (*U.S. v. Mound* (8th Cir. 1998) 149 F.3d 799, 801; *U.S. v. Enjady* (10th Cir. 1998) 134 F.3d 1427, 1432; see also *People v. Soto* (1998) 64 Cal.App.4th 966, 986-990 [75 Cal.Rptr.2d 605], and cases cited therein.) Similarly, the decision in *Smallwood* predates the enactment of Evidence Code section 1108 in 1995. In *People v. Falsetta, supra*, 21 Cal.4th at page 917, the Supreme Court, quoting *Fitch*, characterized Evidence Code section 352 as " 'a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial.' " Here, the trial court weighed the probative value of the evidence against its potential prejudicial effect as required by Evidence Code section 352. We find no abuse of discretion in the court's ruling admitting the evidence and reject appellant's blanket application of the statute to preclude all evidence otherwise admissible pursuant to Evidence Code section 1108.

### 2. *CALJIC No. 2.50.01.*

The jury was given a modified version of CALJIC No. 2.50.01 (6th ed. 1996) as follows: "Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense [on one or more occasions] other than that charged in this case. [¶] 'Sexual offense' means a

___

necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

4"Rule 413(a) of the Federal Rules of Evidence provides: 'In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.' "

crime under the laws of a state or of the United States that involves: [¶] [Any conduct made criminal by Penal Code section 647.6(a). The elements of [this crime] are set forth elsewhere in these instructions.] [¶] If you find beyond a reasonable doubt that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit [the same or similar type] of sexual offenses. If you find that the defendant had this disposition, *you may, but are not required to, infer that [he] was likely to commit and did commit the crime [or crimes] of which [he] is accused.* [¶] [[Y]ou must not consider this evidence for any other purpose.]" (Boldface italics added.) Appellant contends this instruction undermines the presumption of innocence and the reasonable doubt standard.

"The due process clause requires proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. (*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1078, 25 L.Ed.2d 368].)" (*People* v. *Fitch, supra,* 55 Cal.App.4th at p. 182.)

We do not believe proof beyond a reasonable doubt of a basic fact, that appellant committed prior sexual offenses, may act as proxy or substitute for proof of the ultimate fact, i.e., appellant's guilt of the currently charged offenses. The constitutional infirmity arises in this case because the jurors were instructed that they could convict appellant of the current charges based solely upon their determination that he had committed prior sexual offenses. CALJIC No. 2.50.01, as given, required no proof at all of the current charges.

There remains a question whether there is a reasonable likelihood the jury so understood the instruction when it is viewed in light of the instructions as a whole. (See *People* v. *Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224].) The jury was instructed to so consider the instructions. (CALJIC No. 1.01.) They were instructed on the presumption of innocence and reasonable doubt (CALJIC No. 2.90), and on the sufficiency of circumstantial evidence, including the requirement that "before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt." (CALJIC No. 2.01.) These instructions did nothing to clarify that the jurors were not to convict appellant of the current charges simply because they concluded beyond a reasonable doubt that he had committed prior sexual offenses.

Finally, the jury was instructed that if they decided a prior offense had been proved beyond a reasonable doubt, that proof of the prior offense proved a character trait of appellant, and that the proved character trait was

relevant to the question whether he committed the charged offense, "then you may consider this evidence together with other evidence to decide whether he committed the charged offense. [¶] You may not convict him merely because you believe he committed . . . another offense or because you believe he has a character trait that tends to predispose him to committing the charged offense. [¶] The question before you is whether the defendant is guilty of the crime charged in this case, not whether he is guilty of any other offense."[5] (See *People* v. *Fitch, supra,* 55 Cal.App.4th at p. 182, fn. 4.) The instruction conflicts with CALJIC No. 2.50.01, which told the jurors they need only find that appellant committed prior sexual offenses in order to find him guilty of the current charges, and there was nothing to explain to the jury how the instructions might be reconciled.[6]

---

[5]The instruction states as follows: "Evidence has been introduced for the purpose of showing that defendant committed a crime other than that for which he's on trial. Such evidence, if believed, was received and may be considered by . . . you for either of two limited purposes described in this instruction. The first purpose for which it was received and for which it may be considered is for the limited purpose of determining if it tends to show a characteristic method, plan or scheme used in the commission of the offenses charged in this case. For this limited purpose you must weigh the evidence in the same manner you do all the other evidence in this case. Evidence that the defendant committed a crime other than the one for which he is on trial, if believed, was also admitted and may be considered as evidence that he has a trait of character that predisposes him to the commission of certain crimes. Therefore, you may use that evidence that the defendant committed another offense for the limited purpose of deciding whether he has a particular character trait that tends to predispose him to the commission of the charged offense. In weighing evidence of a prior offense you must make several decisions. First you must decide whether a prior offense has been proved beyond a reasonable doubt. Second you must decide whether proof of the prior offense proves a character trait of the defendant. If you determine that the prior offense has not been proved, you must disregard that evidence. If you decide that a character trait of the defendant has been proved, you must decide whether the proved character trait is relevant to whether he committed the charged offense. If you find the proved character trait is not relevant to whether the defendant committed the charged offense, you must disregard the evidence of character. If you find that a character trait of the defendant has been proved and the proved character trait is relevant to whether he committed the charged offense, then you may consider this evidence together with other evidence to decide whether he committed the charged offense. You may not convict him merely because you believe he committed another offense or because you believe he has a character trait that tends to predispose him to committing the charged offense. The question before you is whether the defendant is guilty of the crime charged in this case, not whether he is guilty of any other offense. You may return a verdict of guilty only if you are convinced beyond a reasonable doubt that he committed the offense charged against him in this case. For the limited purpose for which you may consider such evidence you must weigh it as I have described in this instruction. You are not permitted to consider such evidence for any other purpose."

[6]We note that CALJIC No. 2.50.01 (1999 rev.) (6th ed. 1996) includes the following sentence informing the jury that the evidence that the defendant committed one or more prior sexual offenses is not itself sufficient to establish guilt: "However, if you find [by a preponderance of the evidence] that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove [beyond a reasonable doubt] that [he] [she] committed the charged crime[s]."

We conclude that CALJIC No. 2.50.01, as given, is constitutionally infirm. The instruction permitted the jury to find appellant guilty of the current charges solely because he had committed prior sexual offenses. Because we cannot assume the jury followed the constitutionally correct conflicting instruction, the judgment must be reversed.

Having so determined, we need not consider the parties' remaining contentions.

### DISPOSITION

The judgment is reversed.

Zebrowski, J.,* and Mallano, J.,† concurred.

A petition for a rehearing was denied November 15, 1999, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 2, 2000.

---

*Retired Associate Justice, Court of Appeal, Second District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.