Filed 1/14/25  P. v. Williams CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ABRAHAM GUY WILLIAMS,<br><br>    Defendant and Appellant. | B328864<br><br>(Los Angeles County<br>Super. Ct.<br>No. MA079335) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Strassner, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant and appellant Abraham Guy Williams guilty of two counts of continuous sexual abuse of a child under 14 years old (Pen. Code, § 288.5, subd. (a))[1] as to victims T.R. (count 1) and N.R. (count 10); one count of aggravated sexual assault of a child under 14 years old as to T.R. (§§ 261, subds. (a)(2) & (6), 269, subd. (a)(1); count 3); three counts of forcible rape of a child over 14 years old as to T.R. (§ 261, subds. (a)(2); counts 4, 5 & 6); and one count of a lewd act on a child under 14 years old as to N.R. (§ 288, subd. (b)(1); count 7). As to counts 1, 7, and 10, the jury found true multiple victim allegations within the meaning of section 667.61, subdivisions (b) and (e). Defendant admitted that he had suffered a prior strike conviction under the "Three Strikes" law. (§§ 667, subd. (d), 1170.12, subd. (b).)

The trial court sentenced defendant to an indeterminate term of 120 years to life and a determinate term of 54 years in state prison.

In this timely appeal, defendant contends that (1) the trial court erred by failing to give the jury a limiting instruction regarding the use of charged offenses for one victim as propensity evidence as to the other victim; (2) the court abused its discretion by admitting evidence that defendant had been in prison; (3) the prosecution engaged in misconduct by misleading the jury about the burden of proof; and (4) the court abused its discretion by declining to dismiss defendant's prior strike conviction.

We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## BACKGROUND[2]

Defendant began a relationship with Sandra W. (Sandra) in 2006, when Sandra's daughter, T.R., was five years old, and her other daughter, N.R., was three years old. Defendant went to prison in January 2007, and was released over a year later. A few months after his release, defendant moved in with Sandra and her daughters. Defendant and Sandra were married a few months later.

When T.R. was seven years old, defendant began to touch her sexually whenever Sandra was at work. When T.R. turned 11 years old, defendant forced her to perform oral sex on him several times per week. T.R. never told her mother because she was afraid of defendant and of not being believed.

Sometime after T.R. turned 13 years old, defendant knocked her unconscious and vaginally raped her. After that incident, defendant continued to have vaginal sex with T.R. nearly every day. T.R. did not report defendant out of fear; she knew he had a criminal record and had been incarcerated.

When she was 16 years old, T.R. gave birth to a child fathered by defendant. Within six weeks of the baby's birth, defendant resumed sexually assaulting T.R. T.R. gave birth to her second child fathered by defendant when she was 17 years old.

Defendant began to sexually abuse N.R. when she was seven years old, including forcing her to touch his penis. Defendant anally raped N.R. when she was around eight years old. N.R. did not tell anyone what defendant had done to her

---

[2]     Because defendant does not challenge the sufficiency of the evidence supporting his convictions, we only briefly summarize the evidence adduced at trial.

3

because she was scared, embarrassed, and humiliated. When N.R. was around nine years old, defendant forced her to perform oral sex, followed by anal sex. Defendant later started having vaginal sex with N.R. at least once or twice per week.

## DISCUSSION

### I. *Alleged Instructional Error*

Defendant argues that the trial court was required to instruct the jury, sua sponte, that it could not consider the charged offenses as to one victim as propensity evidence of crimes against the other victim. To the extent this claim was forfeited, defendant contends that his trial counsel was ineffective for not requesting such a limiting instruction.

A. <u>Additional background</u>

The People filed a motion in limine requesting that the jury be able to consider as propensity evidence uncharged instances of defendant's sexual abuse of T.R. and N.R. that occurred in Utah from 2017 to 2019. At the hearing on the motion, the trial court confirmed that the propensity evidence sought to be admitted pertained to uncharged sexual abuse. Over defense counsel's objection, the court found the uncharged offenses admissible.

The trial court later instructed the jury with CALCRIM No. 1191A, as follows:

"The People presented evidence that the defendant committed additional sex acts in Utah during 2017[–]2019 that w[ere] not charged in this case. These crimes are defined for you in these instructions.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a

4

reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit Counts 1 through 10, as charged here.  If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of Counts 1 through 10.  The People must still prove the charge beyond a reasonable doubt."

B. <u>Relevant law</u>

Evidence Code section 1101 "limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion.  [Citation.]"  (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822–823 (*Daveggio*).)

"Evidence Code section 1108 . . . carves out an exception to Evidence Code section 1101."  (*Daveggio*, *supra*, 4 Cal.5th at p. 823.)  Subdivision (a) of Evidence Code section 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352."  Evidence Code section 352, in

5

turn, gives a trial court discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"[I]n authorizing the jury's use of propensity evidence in sex offense cases, [Evidence Code] section 1108 . . . extends to evidence of *both* charged and uncharged sex offenses . . . ." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1162.)

C. <u>Standard of review</u>

We review claims of instructional error and ineffective assistance of counsel de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579 [instructional error]; *People v. Mayfield* (1993) 5 Cal.4th 142, 199 [ineffective assistance of counsel].)

D. <u>Analysis</u>

Defendant does not challenge the admissibility of the *uncharged* offenses that occurred in Utah as propensity evidence. Nor does he contend that CALCRIM No. 1191A as given misstated the law. Rather, he asserts that the trial court erred by "not instruct[ing] the jury that *charged* offenses as to one alleged victim could not be considered as propensity evidence against the other . . . ."

Defendant, however, failed to request such a limiting instruction. Accordingly, his claim of instructional error is forfeited. (*People v. Landry* (2016) 2 Cal.5th 52, 99–100 ["'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citations.]"].)

Forfeiture aside, defendant's claim lacks merit. Defendant points to nothing in the record indicating that the trial court or the People led the jury to believe that evidence of the charged offenses could be used as propensity evidence for other charged offenses. Thus, there simply was no occasion for the court to instruct the jury, sua sponte, on whether or how a charged sexual offense could be used to prove propensity.

It follows that we also reject defendant's claim that his trial counsel was ineffective for failing to request a limiting instruction. To establish ineffective assistance of counsel, a defendant must show that counsel's performance was both deficient and prejudicial. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "[A] reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*Ibid.*) Here, "there could be no deficiency in failing to request an unnecessary instruction." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 280–281.) And, "[a] reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide." (*People v. Maury* (2003) 30 Cal.4th 342, 394.)

II. *Alleged Evidentiary Error*

Defendant next argues that the trial court erred in admitting evidence that defendant had previously been incarcerated.

A. Additional background

The trial court found that, if defendant testified, his prior burglary conviction would be admissible as a crime of moral turpitude for impeachment purposes. The People argued that defendant's prior incarceration should also be admitted to

7

substantiate the victims' fear of defendant, which dissuaded them from reporting the abuse.  The court deferred its decision on that issue pending information on whether the victims knew defendant had been in prison.

T.R. subsequently testified during the People's case-in-chief about the first time that defendant had vaginal sex with her.  She explained that she did not tell anyone what happened out of "[f]ear."  The following testimony was elicited without objection:

"Q     What was it about [defendant] that made you afraid?

"A     Knowing his past.

"Q     What do you mean by that?

"A     Knowing the fact that the defendant has a criminal record.

"Q     . . . [A]t this point you were 13.  [¶]  When did you first become aware that the defendant had some type of criminal past?

"A     I was in the second grade, I believe.  And the defendant ended up incarcerated.

"Q     And at that point was he already living with your family or was he part of your life?

"A     He was living with us.

"Q     So he was living with you and then he left at some point and was incarcerated?

"A     Correct.

"Q     And did he return to your house when he got out?

"A     Yes."

Defendant testified on his own behalf later in the trial.  He stated that he had a prior burglary conviction and had spent a year in custody.

B. <u>Relevant law</u>

"No evidence is admissible except relevant evidence" (Evid. Code, § 350), and "[e]xcept as otherwise provided by statute, all relevant evidence is admissible" (*id.*, § 351).  Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (*Id.*, § 210.)

A trial court has discretion to exclude relevant evidence under Evidence Code section 352 "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

""'The prejudice that [Evidence Code] section 352 "'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.]  "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors.  [Citation.]" [Citation.]' [Citation.]  In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.'" [Citation.]" (*People v. Powell* (2018) 6 Cal.5th 136, 162–163 (*Powell*).)

C. <u>Standard of review</u>

We review the trial court's evidentiary rulings for an abuse of discretion.  (*People v. Clark* (2016) 63 Cal.4th 522, 597.)  We

9

will "not disturb the . . . ruling unless it was arbitrary, capricious, or made in a "'patently absurd manner that resulted in a manifest miscarriage of justice.'" [Citation.]" (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)

D. <u>Analysis</u>

There was nothing arbitrary, capricious, or patently absurd about the trial court's decision to admit evidence of defendant's previous incarceration. The brief mention that defendant had been to prison was directly probative of the genuineness and reasonableness of T.R.'s fear of defendant and its effect on her delayed disclosure of defendant's abuse. This was a highly relevant issue in this case, as T.R.'s "credibility was crucial to the prosecution's case." (*People v. Case* (2018) 5 Cal.5th 1, 31 (*Case*); see also *People v. Valencia* (2008) 43 Cal.4th 268, 302 ["Evidence of fear is relevant to the witness's credibility"].)

Defendant argues that "the actual probative value of the evidence was minimal because T[.R.] was seven years old at most when she learned of [defendant]'s status as a prison inmate" and that "[i]t is inconceivable" that such a young child would "attach[] the same opprobrium to the reality of state prison that an adult jur[or] would." This argument misses the mark because it goes to the weight a jury should have given to T.R.'s testimony, and not its admissibility.

Neither do we agree with defendant that the admission of defendant's prior incarceration was unduly prejudicial. In this case, the evidence that defendant had been to prison for a burglary conviction "was far less inflammatory than the evidence of the charged offenses" (*Case, supra*, 5 Cal.5th at p. 32), which involved horrific acts of sexual abuse against children. "There is no reason to believe the jury would have indulged in the

10

speculative and emotional response defendant imagines."
(*Powell*, *supra*, 6 Cal.5th at p. 163.)

III. *Alleged Prosecutorial Misconduct*

Defendant argues that the prosecutor committed prejudicial misconduct during closing argument by misleading the jury about the applicable burden of proof to find defendant guilty of the charged offenses.

A. Additional background

During closing argument, the prosecutor stated:

"Now, all of the information we heard about before up through 2017 w[as] the charged conduct, right? That makes up counts 1 through 10.

"But you also heard quite a bit of testimony about abuse that continued when they lived in Roy, Utah and Ogden, Utah. And we're referring to this as the uncharged conduct.

"Now, why does the uncharged conduct matter? For a couple of reasons. One, it helps contextualize the full scope of their abuse. Just because they left Palmdale in California, the anal sex, the vaginal sex, the oral sex, and the physical violence didn't stop. The defendant took that terror across state lines and continued to abuse both girls in Utah as well. [¶] . . . [¶]

"Now, the reason why this has legal significance is because you can consider uncharged conduct in your consideration of the charged conduct. What does this mean? It is jury instruction 1191A, right? This is a different burden of proof.

"In Utah you only have to believe by a preponderance of the evidence to determine whether or not those sex acts are true. That means, do you think that it's more likely than not that the defendant raped the girls in Utah? That he sodomized them in Utah? That he forced oral sex on them in Utah? If you believe

11

that it's more likely than not that that occurred, you can use that analysis to decide he committed the acts in California.

"If he was likely to do it in Utah by a lower standard of preponderance of evidence, you can use that in considering whether or not he did it in California. If he did it there, he's more likely to do it here.

"Two things to keep in mind about your consideration of uncharged conduct. Utah conduct burden of proof is preponderance of the evidence. It's a lower standard. Charged conduct, what happened here in California, is proof beyond a reasonable doubt; that's something that we talked about kind of ad nauseam during the jury selection process. You have the legal definition of what that is and I'll probably talk about it a little bit more during my argument.

"So it's a factor that you guys can take into consideration in deciding whether or not he's guilty of the acts in California. It's not the only thing you can consider, but it's a factor to go along with all of the other evidence."

B. Relevant law

"'A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact.' [Citation.] 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' [Citation.]" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 306.)

C.  Standard of review

We review de novo a claim of prosecutorial misconduct. (See *People v. Uribe* (2011) 199 Cal.App.4th 836, 860.)

D.  Analysis

Defendant contends that the prosecutor's closing argument improperly "led the jury to believe that it could employ a preponderance of the evidence standard in determining whether [defendant] was guilty of the California offenses, and still comply with the [trial] court's instruction that the standard of proof to find a verdict of guilty was guilt beyond a reasonable doubt." Specifically, defendant points to the prosecutor's statement that if the jury "believe[d] that it's more likely than not that [the uncharged Utah offenses] occurred, [the jury could] use that analysis to decide he committed the acts in California."

Defendant forfeited his claim of misconduct by failing to raise it below.[3]  (*People v. Winbush* (2017) 2 Cal.5th 402, 481.)

The claim also fails on the merits.  Read in its full context, the prosecutor's closing argument made it absolutely clear that the jury was required to find defendant guilty of the charged offenses beyond a reasonable doubt.  The prosecutor expressly stated that the "Utah conduct burden of proof is preponderance of the evidence.  It's a lower standard.  Charged conduct, what happened here in California, is proof beyond a reasonable doubt . . . ."  The prosecutor correctly stated the law that the

---

[3]     And, because there was nothing objectionable about the prosecutor's closing argument with respect to the burden of proof regarding the charged and uncharged offenses, we also reject defendant's alternative argument that his trial counsel was ineffective for failing to object.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections"].)

13

uncharged offenses admitted under Evidence Code section 1108 only needed to be proven by a preponderance of the evidence. (See *People v. Regalado* (2000) 78 Cal.App.4th 1056, 1061.) No reasonable juror could have construed the prosecutor's argument as reducing the burden of proof for the charged California offenses from beyond a reasonable doubt to a preponderance of the evidence.

IV. *Alleged Error in Refusing to Dismiss Strike*

Finally, defendant argues that the trial court abused its discretion by declining to dismiss his prior "strike" conviction.

A. <u>Additional background</u>

Prior to sentencing, defendant filed a *Romero*[4] motion to dismiss his prior strike conviction of burglary from 2003. The motion explained that defendant's "parents were never part of his life"; defendant's father had been incarcerated when defendant was born and died in prison; and defendant's mother died when he was a toddler. Defendant "ha[d] battled with depression and substance abuse for most of his life"; had attempted suicide as a teenager; "was physically and emotionally abused by his foster families"; was shot when he was 19 years old; and had been homeless for a period of time. Defendant attached a psychological report by a licensed clinical social worker that detailed his background.

At the sentencing hearing, the trial court stated that it had "read [defendant's] motion as well as the accompanying psychological workup by [the] licensed social worker . . . ." Defense counsel submitted on the motion. The prosecutor argued that while the strike appeared to be remote in time, it occurred

---

[4]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

14

relatively close in time to when defendant began the sexual abuse at issue in this case.

The trial court denied the motion as follows:

"So the court does agree while if you were to just look at the conviction date of his strike prior which I believe is 2003 in and of itself not considering anything else, one might consider that to be remote; however, this court does not consider that to be remote. In light of the fact that when he was released from prison on that case and on parole, that is when the abuse began shortly thereafter for the next 10 years regarding . . . T[.R.] and N[.R.] [¶] . . . I will also note that he failed on parole and was sent back to state prison as a violation in 2007.

"So although it may seem that it's remote in time, based upon his prior record, based upon the fact that . . . the continuous sexual abuse and the child abuse took place over almost a decade shortly after he was released while on parole, the court has considered that factor as well as other factors in considering whether it is going to strike his strike prior . . . .

"In exercising its discretion to not strike the strike prior enhancement under . . . section 1385 the court considered the nature and the circumstances of the defendant's current crimes, the defendant's prior convictions and record and the particulars of his . . . background, character and prospects.

"The court finds the defendant squarely fits within the spirit of the Three Strikes law."

B. <u>Relevant law</u>

A trial court may, in furtherance of justice, strike a prior conviction allegation brought under the Three Strikes law. (§ 1385, subd. (a); see also *Romero*, *supra*, 13 Cal.4th at pp. 529–530.)  In determining whether to take such action, the court

15

"must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

C. <u>Standard of review</u>

We review the denial of a *Romero* motion to dismiss an allegation under the Three Strikes law for an abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at pp. 374–375.)

D. <u>Analysis</u>

Applying these legal principles, we readily conclude that the trial court did not abuse its discretion. This case involved continuous sexual abuse of children over the course of a decade. The abuse began not long after defendant suffered the prior strike in question. Accordingly, that strike was not remote in time from the current criminal conduct.

Defendant asserts that the trial court failed to afford appropriate weight to "mitigating aspects of [his] background" and, instead, "virtually ignored them." The record belies this characterization.

16

The trial court expressly noted that it had read defendant's moving papers and the psychological evaluation offered in support. The court also noted that it had "considered the nature and the circumstances of the defendant's current crimes, the defendant's prior convictions and record and the particulars of his . . . background, character and prospects." Thus, the record shows that the court considered the totality of the evidence that defendant placed before it and found that he "squarely fit[] within the spirit of the Three Strikes law." Where, as here, "the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310), we can find no abuse of discretion and will affirm the court's ruling.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


17